IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DAVID METZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-10-1240-D |
| | ) | |
| THE BOARD OF COUNTY | ) | |
| COMMISSIONERS OF OKLAHOMA | ) | |
| COUNTY, OKLAHOMA; and | ) | |
| JOHN WHETSEL in his official capacity | ) | |
| as Sheriff of Oklahoma County, | ) | |
| | ) | |
| Defendants. | ) | |

## O R D E R

Before the Court is the Motion for Summary Judgment of Defendants Board of County

Commissioners of Oklahoma County and Sheriff John Whetsel [Doc. No. 19], filed pursuant to Fed.

R. Civ. P. 56.[1]  Defendants seek a judgment as a matter of law in this civil rights action under 42

U.S.C. § 1983 arising from Plaintiff's confinement in the Oklahoma County Detention Center or jail.

The Motion is fully briefed and at issue, and the Court has heard oral argument.

## Background

Plaintiff David Metz was physically attacked and sexually assaulted by his cell mate while

confined as a pretrial detainee in the Oklahoma County jail in June, 2010.  He has brought a § 1983

action against Oklahoma County by naming as defendants the Board of County Commissioners and

John Whetsel in his official capacity as sheriff.[2]  The Complaint alleges that the County subjected

---

[1] The movants are the only remaining defendants; the Complaint named a "John Doe" defendant who was never identified and voluntarily dismissed.  *See* Joint Stipulation of Dismissal [Doc. No. 15].

[2] "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *accord Bender v. Williamsport Area Sch. Dist.*,
(continued...)

Plaintiff to a substantial risk of harm, in violation of the Eighth and Fourteenth Amendments, by failing to protect him from a violent inmate and by failing to adopt sufficient policies and practices to provide reasonably safe jail conditions.  The Complaint also purports to assert a pendent state law claim based on an alleged violation of the Oklahoma Constitution.  Defendants' Motion seeks summary judgment on all claims.

## Standard of Decision

Summary judgment is proper "if the movant shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is genuine if the evidence is such that a reasonable jury could return a verdict for either party.  *Id*. at 255.  All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party.  *Id*.  If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, then all other factual issues concerning the claim become immaterial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment.  *Celotex*, 477 U.S. at 322-23.  If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial.  *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To

---

[2](...continued)
475 U.S. 534, 544 (1986).  "A suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same." *Watson v. City of Kansas City*, 857 F.2d 690, 695 (10th Cir. 1988); *see also Hinton v. City of Elwood*, 997 F.2d 774, 783 (10th Cir. 1993).

accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* Fed. R. Civ. P. 56(c)(1)(A). "The court need  consider only the cited materials, but may consider other materials in the record." *See* Fed. R. Civ. P. 56(c)(3); *see also Adler*, 144 F.3d at 672.  The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### Undisputed Facts [3]

On May 25, 2010, Plaintiff was arrested and booked into the Oklahoma County jail on a charge of domestic abuse.  After booking, Plaintiff was placed in the general population and assigned to a cell with another male inmate, Eric Sloan.  Mr. Sloan had also been arrested and booked into the jail on a charge of domestic abuse on February 24, 2010; the charge was filed as a felony case on March 4, 2010.  Also, Mr. Sloan had previously been detained in the Oklahoma County jail.  He was booked on a charge of domestic abuse in November, 2009, and pled guilty to a misdemeanor offense in December, 2009.  During that detention, he was placed on suicide observation for two days before being moved to the general population.

On June 12, 2010, Plaintiff informed a detention officer that he had been sexually assaulted by Mr. Sloan.  The officer immediately contacted a supervisor, and Plaintiff was removed from his assigned cell.  On the same day, Plaintiff was taken to the Southwest Medical Center, where he received a medical examination for a possible sexual assault.  Plaintiff was returned to the jail and

---

[3] This statement includes material facts presented by both parties that are supported as required by Fed. R. Civ. P. 56(c)(1).  If a party has asserted a fact, or asserted that a fact is disputed, but has failed to provide such support, the assertion is disregarded.  All facts are stated in the light most favorable to Plaintiff.

segregated from further contact with Mr. Sloan.  The two inmates were housed on separate floors until Plaintiff was released from custody on June 27, 2010; they were never housed together in the same cell after Plaintiff's first complaint.

Following the June 12 incident, both Plaintiff and Mr. Sloan gave written statements.  *See* Pl.'s Resp. Br., Exs. 1 & 17 [Doc. Nos. 23-1 & 23-17].  These statements indicate that detention officers were made aware of a conflict between the two men before the attack and that both had requested a change of cells.  The two statements recount different versions of the conflict, however, and neither suggests that the jail staff was informed before the attack of a physical threat or sexual conduct.[4]  With his brief in opposition to summary judgment, Plaintiff has submitted his own affidavit stating that Mr. Sloan had threatened him and that he "made verbal and written requests . . . to be moved from [his] cell."  *See* Metz Aff. [Doc. No. 23-16], ¶ 3.  Plaintiff does not indicate, however, that he disclosed to jail staff these requests were due to a threat by Mr. Sloan.  As a result of the incident, Mr. Sloan subsequently pled guilty to a misdemeanor assault and battery charge.

With his brief in opposition to summary judgment, Plaintiff has presented evidence that the County was notified by the United States Department of Justice (DOJ) in July, 2008, of conclusions reached following an investigation of jail conditions during several site visits in 2003 and a final visit in April, 2007.  DOJ concluded that certain jail conditions were constitutionally inadequate; general areas of deficiency found by DOJ included protection of detainees from harm and mental health services.  In addition, Plaintiff has submitted copies of the jail's written policies regarding inmate classification and housing and, based on these policies, states that the County's "policies and customs concerning inmate classification are inadequate to protect inmates from a substantial risk

---

[4] In fact, Plaintiff denies in his summary judgment response any prior physical violence or sexual assault by Mr. Sloan.  *See* Pl.'s Resp. Br. [Doc. No. 23] at 3, ¶ 6.

of harm." *See* Pl.'s Resp. Br. [Doc. No. 23] at 4, ¶ 5. The factual basis for this conclusory statement is not apparent on the face of the policies, and the statement seems inconsistent with the DOJ report, which concluded, for example, that "the Jail has adequate policies and procedure for classifying detainees according to their risks and needs" but "overcrowded conditions at the Jail make it impossible to cell detainees consistently according to their classification." *See* Pl.'s Rep. Br., Ex. 4 [Doc. No. 23-4] at 10. Plaintiff presents no evidence that he and Mr. Sloan were not properly housed together in accordance with the County's classification and housing policies.

Plaintiff also presents evidence of court proceedings that occurred in Mr. Sloan's felony case. Documents filed in the criminal case indicate that Mr. Sloan received a court-ordered competency evaluation at his attorney's request. An initial report by a forensic psychologist dated April 29, 2010, was filed in the state court case record on May 10, 2010. The psychologist concluded that Mr. Sloan likely met the diagnostic criteria for mental retardation. The psychologist also found that, although Mr. Sloan reported a past diagnosis of bipolar disorder, he was then evidencing no signs of the disorder or any major mental illness. The psychologist also reported that he had requested information from the jail's medical staff regarding medications and a member of the mental health staff had indicated he had no information regarding Mr. Sloan. The court's order authorizing a competency evaluation was entered on May 11, 2010, and bears a sheriff's return reflecting delivery to "DHS Developmental Disabilities" on May 12, 2011. The process apparently culminated in a report dated June 28, 2010, which is not part of the record, and findings by the court on July 14, 2010, that Mr. Sloan was competent, not mentally ill or in need of treatment, and not a threat to himself or others. However, this finding of competence was subject to conditions that Mr. Sloan continue to receive "the same medications as [he] received at the Oklahoma Forensic Center" and

that "[a]ny deviations from the prescribed medications" be approved by the court. *See* Pl.'s Resp. Br., Ex. 22 [Doc. No. 23-22] at 2.

## Discussion

To establish a § 1983 claim against the County, Plaintiff must establish both that a constitutional violation occurred and that an official policy caused the violation: "§ 1983 provides for the imposition of liability where there exists an 'affirmative' or 'direct causal' link between a municipal person's adoption or implementation of a policy and a deprivation of federally protected rights." *Dodds v. Richardson*, 614 F.3d 1185, 1202 (10th Cir. 2010). The alleged deprivation in this case is a violation of a pretrial detainee's due process right to be protected from inmate violence.[5]

### A.   Constitutional Violation

To establish a violation of an inmate's right to constitutionally adequate safety, "a plaintiff must satisfy two requirements, consisting of an objective and subjective component." *Id.* (citing *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998)). Plaintiff must show conditions that, viewed objectively, pose a substantial risk of serious harm and, viewed subjectively, constitute deliberate indifference to inmate safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Gonzales v. Martinez*, 403 F.3d 1179, 1186 (10th Cir. 2005). "The subjective component requires . . . a 'sufficiently culpable state of mind,'" which in this context "is one of 'deliberate indifference to inmate health and safety.'" *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) (quoting *Farmer*

---

[5] The parties agree that the Eighth Amendment, as applied to pretrial detainees by operation of the Due Process Clause of the Fourteenth Amendment, provides the appropriate constitutional standard. *See Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998); *see also Ledbetter v. City of Topeka*, 318 F.3d 1183, 1188 (10th Cir. 2003).

*v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 297, 302-03 (1991)); *see also*

*Gonzalez*, 403 F.3d at 1186.  The court of appeals has explained this requirement as follows:

> [T]he jailer is liable only if he or she knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  It is not enough to establish that the official should have known of the risk of harm.

*Craig*, 164 F.3d at 495-96 (internal quotations omitted); *see Verdecia v. Adams*, 327 F.3d 1171,

1175 (10th Cir. 2003).  A plaintiff may demonstrate a triable issue by presenting facts that "raise a

reasonable inference that [a jailer] knew of and disregarded an excessive risk to [the plaintiff]."

*Gonzales*, 403 F.3d at 1187; *see also Lopez v. LeMaster*, 172 F.3d 756, 762 (10th Cir. 1999).

Further, "the subjective component requires the prison official to disregard the risk of harm claimed

by the prisoner."  *Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009) (footnote omitted).

In this case, upon consideration of the facts shown by the summary judgment record, the

Court finds that Plaintiff has failed to present sufficient facts to support his constitutional claim.  The

objective component of his claim is sufficiently supported because "'deprivations resulting from

sexual assault' are 'sufficiently serious to constitute a violation under the Eighth Amendment.'"

*Gonzalez*, 403 F.3d at 1186 (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998)).

Regarding the subjective component, however, the question presented – as framed by Plaintiff's

summary judgment arguments – is whether jail staff or officials knew of a risk posed by Mr. Sloan,

but failed to take reasonable measures to abate the risk.  On this issue, the Court finds that Plaintiff

has failed to come forward with sufficient facts to support a reasonable inference that the jail staff

knew of and disregarded an excessive risk to his safety.

Plaintiff argues that jail officials knew generally of a risk to inmate safety based on the DOJ report received in 2008 and on alleged noncompliance with state laws regulating jail conditions. Plaintiff has failed to articulate, however, how any deficiency identified in the 2008 DOJ report may have contributed to Mr. Sloan's attack of him in 2010. Plaintiff points to a noted risk of inmate-on-inmate violence posed by failing to house inmates according to their classification level, but he fails to provide factual support for his position that Mr. Sloan was either improperly classified or improperly housed according to his classification level. Also, Plaintiff relies on the DOJ report regarding mental health services and a state jail standard that prohibits housing mentally ill inmates in the general population. However, the summary judgment record affirmatively shows that jail officials had no reason to know Mr. Sloan was suffering from any mental illness in June, 2010. Assuming the jail staff was aware of Mr. Sloan's psychological evaluation in his criminal case, the only report issued before June, 2010, stated that Mr. Sloan was exhibiting no signs of mental illness. In short, Plaintiff has failed to provide factual support for his arguments that Mr. Sloan needed, but failed to receive, treatment for bipolar disorder prior to his June, 2010 attack of Plaintiff; that any lack of treatment of Mr. Sloan created a significant risk that he would physically attack or sexually assault another detainee; and that the jail staff knew of a risk posed by Mr. Sloan but disregarded it.

In summary, upon consideration of the summary judgment record, viewed in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to demonstrate a genuine dispute of material fact regarding the subjective element of his constitutional claim. Because Plaintiff has failed to present sufficient facts to raise a triable issue of whether jail officials knew of and

disregarded an excessive risk to Plaintiff's safety, Defendants are entitled to summary judgment on his claim of § 1983 liability for unsafe jail conditions.

**B.      Governmental Liability**

Further, in addition to proving that a constitutional violation occurred, Plaintiff must establish a basis to impose § 1983 liability on the County for any unconstitutional jail condition. In response to Defendants' Motion, Plaintiff argues that the County may be held liable for his injuries based on jail policies or customs regarding inmate classification and cell assignment, and regarding mental health services.

A governmental entity may be liable when "the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers." *Monell v. Department of Social Servs.*, 436 U.S. 658, 690 (1978). A governmental entity may also incur liability when an unconstitutional practice "is so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Murrell v. School Dist. No. 1*, 186 F.3d 1238, 1249-50 (10th Cir. 1999); *see Monell*, 436 U.S. at 691. Liability based on an unconstitutional policy or custom can be established "only when the official policy is the 'moving force behind the injury alleged. That is, a plaintiff must show that the [official] action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the [official] action and deprivation of federal rights.'" *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1999) (quoting *Board of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)); *see Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1318 (10th Cir. 2002).

For the reasons discussed above, the Court finds that Plaintiff has failed to make a minimally sufficient showing of a causal link between any established jail policy or custom and his attack by

Mr. Sloan.  Plaintiff provides no factual support for his position that Mr. Sloan was improperly classified or improperly housed in the general population of the jail in June, 2010.  Further, Plaintiff provides no support for his position that Mr. Sloan was denied necessary mental health treatment prior to his attack of Plaintiff.  In short, the Court finds that Plaintiff has failed to demonstrate the existence of genuine issues of material facts concerning his claim that Defendants should be liable for an unconstitutional policy or custom that caused Plaintiff's injuries.  Therefore, Defendants are entitled to summary judgment on Plaintiff's § 1983 claim against the County.

**C.     State Law Claim**

Plaintiff's state law theory of recovery is not well developed.  Defendants contend that any claim for damages is governed by the Governmental Tort Claims Act, Okla. Stat. tit. 51, § 151 *et seq*., but that the claim fails because Plaintiff did not comply with the statutory requirement of giving timely notice of a claim.  In his initial response to Defendants' Motion, Plaintiff argued simply that notice of a tort claim is not a prerequisite to suit under § 1983; he did not otherwise address any state law claim.  In a surreply brief, Plaintiff similarly provided no argument in support of a state law claim, other than to concede that punitive damages are not available.  *See* Pl.'s Surreply Br. [Doc. No. 27] at 6.  However, Plaintiff identifies no legal basis to impose liability on the County for a violation the Oklahoma Constitution, as alleged in the Complaint.  *See* Compl. [Doc. No. 1] at 10-11, ¶¶ 41-48.  Accordingly, the Court finds that Defendants are entitled to summary judgment with regard to Plaintiff's state law claim.

## Conclusion

For the reasons stated above, Defendants are entitled to a judgment as a matter of law on all claims asserted in the Complaint.

10

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment [Doc. No. 19] is GRANTED.  Judgment will be entered accordingly.[6]

IT IS SO ORDERED this 16th day of February, 2012.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

---

[6] Plaintiff voluntarily dismissed an unidentified, "Officer John Doe" defendant by a joint stipulation pursuant to Fed. R. Civ. P. 41(a)(1).  *See supra* note 1.  Because the stipulation did not state otherwise, the dismissal is without prejudice.  *See* Fed. R. Civ. P. 41(a)(1)(B).  Accordingly, the judgment will reflect that any claim against the individual "John Doe" defendant is dismissed without prejudice.